J-S15033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRUCE HERRING, | |
| Appellant | No. 964 EDA 2015 |

Appeal from the PCRA Order March 3, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-1300063-2006

BEFORE:  BENDER, P.J.E., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MARCH 23, 2016**

Appellant, Bruce Herring, appeals from the denial of his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

We derive the facts and procedural history from the PCRA court's opinion, this Court's opinion on direct appeal, and our review of the certified record.

> On December 17, 2005, a group of thirty friends and family members celebrated a birthday party in memory [of] a relative who passed away a year prior.  [Jeneice] Torres, a witness, gave a speech encouraging everyone to stop leading destructive lives.  Appellant, taking issue with her speech, shoved the witness to the ground making her temporarily lose consciousness.  The fight escalated when the witness' boyfriend, Quishone Harris, intervened.  It temporarily stopped when

---

[*] Retired Senior Judge assigned to the Superior Court.

someone defending Harris, later identified as "C," displayed his gun. The Harris[] group got into a vehicle to drive away, while [] Appellant's group chased Harris. [After the car which Appellant was riding in caught up with Harris's car,] Appellant fired several rounds of gunshots [through the passenger window] that fatally wounded Harris. Nicole Givens, a second witness, identified Appellant from the original fight and as the shooter leaning out of the passenger window firing shots from a silver handgun at Harris' vehicle.

(PCRA Court Opinion, 5/29/15, at 1-2).

On January 30, 2006, Ms. Torres was interviewed by police detectives. During the interview, she was given images from a police department computer to view of a suspect named "Buddy" and without hesitation, she identified Appellant from the computer image as the shooter. (*See Commonwealth v. Herring*, No. 146 EDA 2010, unpublished memorandum at *3-4 (Pa. Super. filed Sept. 2, 2010)).

Appellant was arrested on March 4, 2006 by uniformed officers who recognized him from a wanted poster. Appellant proceeded to a jury trial on October 2, 2007.

During her opening statement, the prosecutor explained

in a homicide case [it] is not uncommon for witnesses to do what we call go south meaning that they are going to come up here, they have to testify in front of the man, [Appellant], who's responsible for the most horrible night and horrible moments of their lives . . . friends and family of his who are sitting in the courtroom, and it's not uncommon for people to panic and for people to, perhaps, back off what they say. . . .

(N.T. Trial, 10/02/07, at 21). Defense counsel did not object to this statement.

The Commonwealth called Ms. Torres as a witness and her testimony was consistent with the statement that she gave to the investigating detectives. (*See Herring*, *supra* at *6). During her testimony, the prosecutor asked Ms. Torres whether she knew "any of the people that are here today for the defendant?" (N.T. Trial, 10/02/07, at 138). Defense counsel objected and the court sustained the objection. (*See id.*).

Ms. Givens also testified, although her testimony at trial differed from the statement that she gave Detective Harkins where she told him that Appellant shot Harris. (*See Herring*, *supra* at *5-6).

> Givens testified that she did not see Appellant in the van. She saw an orange hoody and the person with the orange hoody aimed and fired a gun at them. When the van stopped, the person in the orange hoody exited and fired several shots at the Explorer. Givens acknowledged her statement but claimed not to remember some of the answers that appeared. Givens also claimed the information in the interview was gained through hearsay.

(*Id.* at *6) (citation omitted).

The Commonwealth also introduced the testimony of Detective Harkins who interviewed Ms. Givens. During his testimony, Detective Harkins answered that when she arrived at Homicide, "[s]he was nervous. She was fearful, but not necessarily fearful for herself, but fearful for her family." (N.T. Trial, 10/03/07, at 91). The court sustained defense counsel's objection and struck his response. (*See id.*).

Detective Harkins then read into the record a portion of the statement that Ms. Givens gave when he interviewed her. During this, the following exchange occurred:

**Q:** If I can stop you there, actually, Detective, and start again if you would go to the same answer there with the word "when." Do you see, "When we?"

**A:** Okay. "When we went outside, Buddy and Jeneice were arguing. Jeneice told Buddy --"

**Q:** Okay. I believe you want to start with the word "she" after that sentence.

**A:** "She told Buddy that he should get a job and stop selling rock."

**[Defense Counsel]:** Objection, Your Honor.

**THE COURT:** Sustained. It's stricken.

**[Prosecutor]:** No, the word she was putting him, she was putting him out there?

**THE WITNESS:** I see.

"She was putting him out there, so he got mad and he pushed her down on the ground. . . ."

(*Id.* at 95-96).

The Commonwealth also introduced the testimony of Detective Carl Watkins who interviewed Ms. Torres. Detective Watkins read the statement that he took from Ms. Torres to the jury, which included the following:

Question: Jeneice, in your own words, tell me what you know about the shooting of Quoshine Harris at 6th and West Wingohocking Street.

Answer: I was in Johnny Casa's Bar with family and friends. We had a memorial party for one of my little cousins, Benile Herbert. . . . I was telling some of the guys that were standing outside

- 4 -

that it was time to get off the corner and start doing something for themselves. . . .

(*Id.* at 115-16) (quotation marks omitted). Defense counsel did not object to this testimony. The trial court later sustained several objections to the prosecutor's questions to Detective Watkins about Ms. Torres's demeanor changing, whether her fear in giving an interview intensified, what he knew about the neighborhood she lived in and whether it was the same neighborhood as Appellant and his associates. (*See id.* at 127-28).

The trial court also sustained defense counsel's objection to a question on cross examination of defense witness Nicole Matthews, when the prosecutor asked whether "all the people that were pretty much there that night [were] part of what's called HP[,]" whether HP was a gang, and if the people in the pictures were making gang signs in the pictures. (N.T. Trial, 10/04/07, at 28; *see id.* at 29). Finally, the trial court sustained defense counsel's objection to the prosecutor's statement during closing argument that ". . . there's sayings like snitches get stiches." (*Id.* at 86).

In its initial instructions to the jury, the trial court explained that if counsel objected to evidence, and he decided that it was inadmissible, he would sustain the objection meaning that the jury was not entitled to hear the evidence and "must completely disregard that evidence when deciding this case." (N.T. Trial, 10/02/07, at 10). Furthermore, when instructing the jury prior to deliberation, the trial court indicated that "statements made by counsel are not evidence and are not binding," (N.T. Trial, 10/04/07, at

- 5 -

113), and that the "speeches of counsel are not part of the evidence and you should not consider them as such."  (**Id.** at 117).

On October 5, 2007, the jury convicted Appellant of murder of the third degree, aggravated assault, and firearms not to be carried without a license.[1]  On February 1, 2008, Appellant was sentenced to not less than twenty, nor more than forty years of incarceration.

This Court affirmed the judgment of sentence on September 2, 2010. (**See Herring**, **supra** at *11).  Our Supreme Court denied Appellant's petition for allowance of appeal on May 27, 2011.  On October 27, 2011, Appellant filed a *pro se* PCRA petition.  The court appointed counsel who filed an amended PCRA petition on March 11, 2014.  The PCRA court issued a Rule 907 notice on January 26, 2015, and dismissed the amended petition on March 3, 2015.  **See** Pa.R.Crim.P. 907(1).  This timely appeal followed.[2]

Appellant raises one question on appeal:

> 1.  Did the PCRA [c]ourt err by holding that trial counsel was not ineffective for failing to request a mistrial after serial instances of prosecutorial misconduct?

(Appellant's Brief, at 4).

---

[1] 18 Pa.C.S.A. §§ 2502(c), 2702(a), and 6106(a)(1).

[2] Pursuant to the PCRA court's order, Appellant filed a concise statement of errors complained of on appeal on May 5, 2015.  **See** Pa.R.A.P. 1925(b). The PCRA court entered an opinion on May 29, 2015.  **See** Pa.R.A.P. 1925(a).

Our standard of review of an order dismissing a PCRA petition is well-settled:

> In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. It is well-settled that a PCRA court's credibility determinations are binding upon an appellate court so long as they are supported by the record. However, this Court reviews the PCRA court's legal conclusions *de novo*.

*Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citations and quotation marks omitted).

In his sole issue on appeal, Appellant claims that trial counsel was ineffective for failing to move for a mistrial after the prosecutor referenced Appellant selling drugs, (*see* N.T. Trial, 10/03/07, at 95-96, 116), implied that witnesses were afraid of Appellant, (*see* N.T. Trial, 10/02/07, at 21, 138, 142; N.T. Trial, 10/03/07, at 91, 127-28; N.T. Trial 10/04/07, at 28-29), and made a comment during her closing argument that "snitches get stitches." (N.T. Trial 10/04/07, at 86; *see* Appellant's Brief, at 16-25). Appellant argues that the prosecutor's "snitches get stitches" comment, combined with the aforementioned references, cumulatively made it impossible for the jury to deliberate fairly and impartially. (Appellant's Brief, at 22). Therefore, he contends that trial counsel was ineffective for failing to seek a mistrial. (*See id.* at 18-25). We disagree.

> In order to obtain relief on a claim of counsel ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466

> U.S. 668 (1984). In Pennsylvania, we have applied the *Strickland* test by requiring that a petitioner establish that (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001). Counsel is presumed to have rendered effective assistance, and, if a claim fails under any required element of the *Strickland* test, the court may dismiss the claim on that basis. *Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010).

*Commonwealth v. Reid*, 99 A.3d 470, 481 (Pa. 2014) (case citation formatting provided).

> It is well-established that a prosecutor is free to present his argument with logical force and vigor so long as there is a reasonable basis in the record for the prosecutor's remarks. Further, reversible error arises from a prosecutor's comments only where their unavoidable effect is to prejudice the jurors, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict.

*Commonwealth v. Busanet*, 54 A.3d 35, 64 (Pa. 2012), *cert. denied*, 134 S. Ct. 178 (2013) (citations omitted). Furthermore, "[a] trial court is required to grant a mistrial only where the alleged prejudicial event[s] may reasonably be said to have deprived the defendant of a fair and impartial trial." *Commonwealth v. Brinkley*, 480 A.2d 980, 986 (Pa. 1984) (citation omitted).

In the instant matter, Appellant has failed to overcome the presumption that his trial counsel rendered effective assistance. *See Reid*, *supra* at 481. Appellant has offered no legal basis under which he would have been entitled to a mistrial and accordingly, has not established that his

underlying claim, that counsel was ineffective for failing to request one, has arguable merit. *See id.*

Throughout Appellant's trial, the court sustained counsel's objections to statements about Appellant "selling rock," (N.T. Trial, 10/03/07, at 96); Ms. Torres being intimidated by Appellant's supporters in the courtroom, (*see* N.T. Trial, 10/02/07, at 142); questions to Detective Watkins about Ms. Torres being intimidated, (*see* N.T. Trial, 10/03/07, at 127-28); questions to Ms. Matthews about Appellant being in a gang, (*see* N.T. Trial, 10/04/07, at 28-29); and the prosecutor's "snitches get stitches" comment. (*Id.* at 86).

Furthermore, although trial counsel did not object to the detective reading into the record Ms. Torres's statement that she "was telling some of the guys that were standing outside that it was time to get off the corner and start doing something for themselves[,]" this statement does not imply that Appellant was selling drugs and, even if it did, it would not have mandated a new trial. (N.T. Trial, 10/03/07, at 116); *see Commonwealth v. Stafford*, 749 A.2d 489, 496 (Pa. Super. 2000), *appeal denied*, 795 A.2d 975 (Pa. 2000) ("Not all improper references to prior bad acts will mandate a new trial[.]"); *Commonwealth v. Robinson* 864 A.2d 460, 496 (Pa. 2004), *cert. denied*, 546 U.S 983 (2005) (finding evidence of other crimes admissible "where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts.") (citation omitted).

In its instructions to the jury, the trial court explained that when it sustained an objection to evidence, the jury "must completely disregard that evidence when deciding this case[,]" (N.T. Trial, 10/02/07, at 10), and that the "speeches of counsel are not part of the evidence and you should not consider them as such." (N.T. Trial, 10/04/07, at 117). The jury is presumed to have followed the trial court's instructions to disregard evidence that the trial court strikes from the record after sustaining an objection. *See Commonwealth v. Tedford*, 960 A.2d 1, 37 (Pa. 2008) ("the jury is presumed to follow the court's instructions.") (citation omitted). Appellant has offered no evidence to suggest that the jury did not follow these instructions, and has not shown that he was deprived of a fair and impartial trial. Accordingly, Appellant has not shown that he would have been entitled to a mistrial had trial counsel requested one. *See Brinkley*, *supra* at 986; *Busanet*, *supra* at 64.

Moreover, even if Appellant were able to establish that his underlying claim were meritorious, he has failed to show that he was prejudiced. *See Pierce*, *supra* at 213. We agree with the PCRA court's conclusion that given the extensive evidence of Appellant's guilt, including testimony from two eyewitnesses, Appellant cannot show that he suffered prejudice as a result of counsel's failure. (*See* PCRA Ct. Op., at 8-9); *Pierce*, *supra* at 213; *Reid*, *supra* at 481. Therefore, Appellant's issue does not merit relief.

Order affirmed.

President Judge Emeritus Bender joins the Memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/23/2016