J-S51023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JALIK PEAY | : | |
| | : | |
| Appellant | : | No. 1242 EDA 2017 |

Appeal from the PCRA Order March 22, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0014638-2011

BEFORE: DUBOW, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:                    **FILED SEPTEMBER 25, 2018**

Appellant Jalik Peay appeals from the order denying his first Post Conviction Relief Act ("PCRA")[1] petition.  He contends the Commonwealth withheld evidence regarding Aaron Young, a known witness, and, relatedly, that his trial counsel was ineffective for failing to investigate Young.  We affirm.

We state the background as follows:

Aaron Young allegedly had a dispute with inmate Sean Sullivan over a [prison cell] block worker job in Curran-Fromhold Correctional Facility.  [On June 21, 2011,] Sullivan passed "bangers" [(*i.e.*, prison knives)] to [Appellant], Rashawn Edwards, and Haleem Poole and devised a plan of attack; the plan included distracting the prison guards so that the perpetrators could invade cell 15 which housed victims Young and Richard Gyton.  Earl Bostic was nearby watching television in a dayroom when he was attacked by [Appellant], Rashawn Edwards, and Haleem Poole.

---

[1] 42 Pa.C.S. §§ 9541-9456.

Bostic died of multiple stab wounds to the neck, chest, back, and right arm, one of which partially severed his aorta. Gyton and Young were seriously injured when they were stabbed in the hand, head, arm, and stomach by [Appellant], Rashawn Edwards, and Haleem Poole. The perpetrators used shanks and bangers to carry out the bloody attacks.

Police officers interviewed Gyton at Hahnemann Hospital at the time he was being treated for his stab wounds. The officers memorialized Gyton's statements in a document, which was later read into the record at both the preliminary hearing and at [the jury] trial. In the document, Gyton identified [Appellant], Rashawn Edwards, and Haleem Poole] as the individuals who stabbed the inmate-victims. At trial, however, Gyton testified he did not know who stabbed him, he recanted statements he allegedly made during a prison assessment that indicated he needed to be separated in jail from the [Appellant], Rashawn Edwards, and Haleem Poole because he feared they would harm him again, and he testified about a letter he sent to [Appellant], Rashawn Edwards, and Haleem Poole explaining that his "story" about them committing the crimes had been fabricated.

PCRA Ct. Op. at 2-3 (brackets in original and citation omitted). Young did not testify.

The jury convicted Appellant of third-degree murder, conspiracy, possession of an instrument of crime, and using or possessing a prohibited offensive weapon. The court imposed an aggregate sentence of forty to eighty years' imprisonment. Appellant appealed, this Court affirmed on January 21, 2015, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on July 23, 2015. *Commonwealth v. Peay*, 2372 EDA 2013 (Pa. Super. Jan. 21, 2015) (unpublished mem.), *appeal denied*, 118 A.2d 1108 (Pa. July 23, 2015) (table).

On October 30, 2015, Appellant filed his first *pro se* PCRA petition. The court appointed counsel, who filed an amended PCRA petition on October 12, 2016. The amended petition claimed that trial counsel was ineffective by not investigating Aaron Young, the victim and a potential witness. Am. PCRA Pet., 10/12/16, at ¶ 10. Young, according to the petition, was not called as a trial witness, and he would have testified that Appellant "was not the aggressor, but was there to help protect him from the actual assailants." **Id.** (citation omitted). Appellant also claimed the Commonwealth failed to disclose exculpatory evidence, specifically that the prosecutor failed to inform him that Young would have testified favorably for Appellant. **Id.** at ¶ 12. The petition attached a typewritten interview of Young by PCRA counsel that was allegedly signed by Young. **Id.** at Ex. A. In that statement, Young denied that Appellant attacked him. **Id.** It also stated that Young met with a prosecutor, who allegedly informed him that if Young signed a statement falsely implicating Appellant, the prosecutor would help Young out with his unrelated case. **Id.** The exhibit also included Young's unsworn declaration essentially reiterating the same claim. **Id.** Young died in December of 2016.[2]

---

[2] On February 10, 2017, Appellant's counsel filed a motion to amend the petition to include the affidavit of Selwyn Young. Mot. to Amend PCRA Pet., 2/10/17, at ¶ 2. The motion claimed that Young was the victim of an unrelated murder, and Selwyn would testify at the evidentiary hearing. **Id.** Attached to the motion was Selwyn's affidavit, which essentially averred that Young informed Selwyn that Appellant was innocent. **Id.** at Ex. A. The record does not reflect that the PCRA court granted PCRA counsel's motion to amend.

The PCRA court held hearings on March 20 and 22, 2017. Andrew Notaristefano, Esq., the assistant district attorney that prosecuted the case, testified. According to Notaristefano, Young spoke with the police on June 23, 2011, shortly after the attack, but he did not want to sign a formal written statement out of a concern that other prisoners would find out. N.T. PCRA Hr'g, 3/20/17, at 28-29. According to a summary of that interview, Young stated that Appellant, Sullivan, and Poole entered the cell with weapons and began stabbing him. *Id.* at 48. Young also indicated he did not see who stabbed the decedent. *Id.* That summary was disclosed to Appellant. *Id.*

Notaristefano, along with two detectives, again met Young a week prior to trial. N.T. PCRA Hr'g, 3/20/17, at 16-18; N.T. Trial, 4/29/13, at 11. Notaristefano elaborated on the meeting as follows:

> We brought in Mr. [Aaron] Young. He was extremely uncooperative and very belligerent. He kept saying he was going to refuse to testify, he was going to refuse to testify, refuse to testify [sic]. He would not say why he was going to refuse to testify. Prior to this trial, I tried two codefendants [*i.e.*, Rashawn Edwards and Haleem Poole] as a waiver trial in front of Judge Minehart in, I believe, February. At that time Mr. Young had an open warrant for his own case. And I had warrant officers looking for him because I wanted to speak to him to see if I would have him testify in that trial first because that trial was first in time. We couldn't find him. He was gone.
>
> He was found prior to [Appellant's] trial which was April. The first thing that he said was, he expressed his displeasure about the Warrant Unit looking for him; that he skipped the county because he didn't want to be found because he didn't want to testify. Then when the trial was over, he came back to Philadelphia. He was mad that the Warrant Unit officers were not looking for him for his own case. He's not worried about this, his own case. It was just this. He said, I'm not testifying in this case, I'm not testifying in

this case [sic]. I asked him why. He refused to say why. And he was very uncooperative.

We got into a little bit about the case, not much. He did admit to being a block worker and he said that because the whole thing was with [Sullivan], he said that he would beat up [Sullivan] or something like that because he was a boxer. And that [Sullivan] could never take him with a shank or something like that. [Sullivan] was the only name that came up that I remember. We never even got to your client [*i.e.*, Appellant].

It was not a very long meeting in the DA's office because he was entirely uncooperative. And I had nothing to **Brady**[3] him with, because he didn't sign a statement so why would I ever call him or go any further. That was that.

N.T. PCRA Hr'g, 3/20/17, at 37-39. Notaristefano reiterated that Young did not mention Appellant during this meeting. **Id.** at 44.[4]

During the Commonwealth's cross-examination, Notaristefano testified that he turned over the Department of Corrections' (DOC) investigation. **Id.** at 49. The investigation, in relevant part, disclosed that the DOC had interviewed fifty to sixty people about the incident, and Young denied "knowing anything." **Id.** at 50. The Commonwealth concluded its cross-examination with Notaristefano agreeing he disclosed two contradictory

---

[3] **Brady v. Maryland**, 373 U.S. 83 (1963).

[4] PCRA counsel also questioned Notaristefano about the testimony of Maureen Gay, a prison nurse. **Id.** at 30. Specifically, Appellant's trial counsel had asked Gay about what Young said to her on the day of the incident. **Id.** at 31-32. The Commonwealth successfully objected on the basis of hearsay, "the proper channel would have been to call Mr. Young not Ms. Gay to get in hearsay of Mr. [Aaron] Young and that's why I objected." **Id.** at 32. At the time of trial, Young was still alive.

documents: the DOC interview in which Young denied "knowing anything" and the June 23, 2011 summary of his unsworn statement to the police inculpating Appellant. *Id.* at 50-51.

During re-direct examination, Notaristefano reiterated that at the meeting shortly before trial, Young was uncooperative and did not ask him about Appellant. *Id.* at 51. Notaristefano acknowledged he did not notify defense counsel about that last meeting and Young's lack of cooperation. *Id.* at 52. We add that Notaristefano testified that as a matter of course, he would have provided the criminal history of Young and any other witness to Appellant. *Id.* at 23.

Appellant's trial counsel also testified at the hearing. Trial counsel stated he had no recollection of Young, including whether he asked Young about his statements and whether he discussed Young's potential testimony with the prosecutor. N.T. PCRA Hr'g, 3/22/17, at 8-11. Young's DOC statement was in the file. *Id.* at 8. Appellant did not present Selwyn as a witness.

Although not part of the record sent to this Court, the docket reflects that the PCRA court dismissed Appellant's petition on March 22, 2017. Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following issues:

1. Whether the PCRA court erred as a matter of law and abused its discretion when it denied Appellant's sought-after PCRA relief

- 6 -

asking for a new trial because of trial counsel's failure to investigate Aaron Young as a witness.

2. Whether the PCRA court erred as a matter of law and abused its discretion when it denied Appellant's sought-after PCRA relief asking for a new trial because the prosecution failed to produce exculpatory evidence pursuant to Brady, namely, information from Aaron Young provided to the prosecution shortly before trial and the fact that Aaron Young had a new, pending criminal matter against him.

Appellant's Brief at 4.

We summarize Appellant's arguments for both of his issues, as they are interrelated.[5] In Appellant's view, the Commonwealth engaged in pervasive suppression at all levels. *Id.* at 10. Specifically, according to Appellant, the police and the prosecutor heard Young's statement and elected to conceal it. *Id.* at 10-11. Relatedly, Appellant argues that trial counsel was ineffective by failing to investigate Young. *Id.* at 12-13. In Appellant's view, it was *per se* unreasonable for his trial counsel to not investigate Young. *Id.* at 13. Appellant opines that Young was available as a witness, Young's prior written statements were provided to trial counsel prior to trial, and Young's criminal history was a matter of public record. *Id.*

Our standard of review is well-settled:

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This

---

[5] We note that although Appellant raised two issues, he only presented one argument, which violates Pa.R.A.P. 2119(a). *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued").

review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

It is well-settled that

[t]o establish a **Brady** violation, [the defendant] must demonstrate: (1) the prosecution concealed evidence; (2) the evidence was either exculpatory[6] or impeachment evidence favorable to him; and (3) he was prejudiced. To establish prejudice, [the defendant] must demonstrate a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Impeachment evidence, which goes to the credibility of a primary witness against the accused, is critical evidence and it is material to the case whether that evidence is merely a promise or an understanding between the prosecution and the witness. . . . Finally, we note there is no **Brady** violation when [the defendant] knew or, with reasonable diligence, could have uncovered the evidence in question.

---

[6] "Exculpatory evidence is that which extrinsically tends to establish defendant's innocence of the crimes charged." *Commonwealth v. Lambert*, 765 A.2d 306, 325 n.15 (Pa. Super. 2000) (citation omitted); *accord Commonwealth v. Redmond*, 577 A.2d 547, 552 (Pa. Super. 1990) ("Exculpatory evidence includes material that goes to the heart of the defendant's guilt or innocence as well as that which might well alter the jury's judgment of the credibility of a crucial prosecution witness." (internal quotation marks and citation omitted)).

*Commonwealth v. Treiber*, 121 A.3d 435, 460-61 (Pa. 2015) (internal quotation marks, brackets, and citations omitted).

In *Commonwealth v. Wholaver*, 177 A.3d 136 (Pa. 2018), the Pennsylvania Supreme Court elaborated on the prejudice prong:

> [F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In determining if a reasonable probability of a different outcome has been demonstrated, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense.

*Id.* at 158-59 (quotation marks, brackets, and citations omitted).

We also note that it is "well established that where the Commonwealth has in its possession pretrial statements of its witnesses which have been reduced to writing and relate to the witness' testimony at trial, it must, if requested, furnish copies of these statements to the defense." *Commonwealth v. Brinkley*, 480 A.2d 980, 984 (Pa. 1984) (citation omitted). Such "statements made by a witness prior to trial are subject to disclosure only when they are signed, adopted or otherwise shown to be substantially verbatim statements of that witness." *Id.* (citations omitted).

To warrant relief based on an ineffectiveness claim, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so

undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Commonwealth v. Jones***, 912 A.2d 268, 278 (Pa. 2006); ***accord*** 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed to have rendered effective assistance. ***Commonwealth v. Weiss***, 81 A.3d 767, 783 (Pa. 2013). To overcome the presumption, the defendant has to satisfy the performance and prejudice test set forth in ***Strickland v. Washington***, 466 U.S. 668 (1984). The Pennsylvania Supreme Court has applied the ***Strickland*** test by examining three elements, specifically whether (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner has shown that he suffered prejudice as a result of counsel's lapse, *i.e.*, that there is a reasonable probability that the result of the proceeding would have been different. ***Commonwealth v. Bennett***, 57 A.3d 1185, 1195-96 (Pa. 2012). If a claim fails under any necessary element of the ***Strickland*** test, the court may proceed to that element first. ***Bennett***, 57 A.3d at 1195-96. Counsel will not be deemed ineffective for failing to raise a meritless claim. ***Jones***, 912 A.2d at 278.

> When raising a failure to call a potential witness claim, the PCRA petitioner satisfies the performance and prejudice requirements of the ***Strickland*** test by establishing that:
>
> > (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

> To demonstrate **Strickland** prejudice, the PCRA petitioner must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. **Commonwealth v. Gibson**, 597 Pa. 402, 951 A.2d 1110, 1134 (2008); **see also Commonwealth v. Chmiel**, 585 Pa. 547, 889 A.2d 501, 546 (2005) ("Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness' testimony would have been beneficial or helpful in establishing the asserted defense.").

**Commonwealth v. Johnson**, 966 A.2d 523, 536 (Pa. 2009) (internal quotation marks and one citation omitted).

In the case at hand, there was no statement by Young as a result of the meeting with Notaristefano a week before trial. Because there was no statement, the Commonwealth could not turn it over. **See Brinkley**, 480 A.2d at 984. But even if the Commonwealth should have disclosed that particular meeting with Young, there was no evidence of exculpatory or impeachment material. **See** N.T. PCRA Hr'g, 3/20/17, at 37-39. Indeed, Young never even mentioned Appellant. **See id.** at 44.

Regardless, even if Young's uncooperative stance and "statements" at that meeting could possibly be construed as favorable or impeachment evidence, Appellant has not established their materiality. Specifically, Appellant has not demonstrated that without such evidence, he did not receive a fair trial. **See Wholaver**, 177 A.3d at 158-59; **Bennett**, 57 A.3d at 1195-96. It is not entirely evident how knowledge of Young's lack of cooperation

would have helped Appellant at trial, let alone undermined the verdict. ***See Wholaver***, 177 A.3d at 158-59.[7]

Although Appellant similarly claims that trial counsel was ineffective by not investigating Young, Appellant has not, and cannot, demonstrate that the absence of Young's testimony denied him a fair trial. ***See Johnson***, 966 A.2d at 536. Young was unwavering in his decision not to testify at Appellant's trial and at the trial of Appellant's co-defendants several months beforehand. ***See*** N.T. PCRA Hr'g, 3/20/17, at 37-39. Further, Young left Philadelphia to avoid being compelled to testify and only returned because he thought Appellant's trial was over. ***See id.*** Therefore, Appellant has failed to establish that Young was willing to testify, which is a required element of a potential witness claim. ***See Johnson***, 966 A.2d at 536. Because Appellant similarly failed to establish the merits of his ***Brady*** violation, ***see Treiber***, 121 A.3d at 460-61, we conclude the PCRA court's order is free of legal error and affirm the order below. ***See Ford***, 44 A.3d at 1194.

Order affirmed.

---

[7] As noted above, Gyton incriminated Appellant, although he recanted at trial.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/25/18