J-S28040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LAQUAM SMITH, | |
| Appellant | No. 3578 EDA 2014 |

Appeal from the Judgment of Sentence July 17, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0005466-2013

BEFORE: BOWES, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JUNE 14, 2016**

Appellant, Laquam Smith, appeals from the judgment of sentence imposed July 17, 2014 following his jury conviction of murder of the first degree; robbery; burglary; criminal conspiracy to commit murder, robbery, and burglary; and violations of the Uniform Firearms Act.[1]  We affirm.

We take the following facts from the trial court opinion and our review of the certified record.

> On February 21, 2012, a white Chrysler 300 followed a red Mitsubishi Montero owned by the [d]ecedent, Julio Cesar Hernandez (Hernandez), southbound into the shared driveway behind Hernandez's home, located at 3900 Palmetto Street . . . . Two surveillance cameras affixed to the rear of 3910 Palmetto

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 3701(a)(1)(i), 3502(a), 903(c), 6106(a)(1), and 6108, respectively.

Street showed the two (2) vehicles enter the driveway, and captured the Chrysler parking along the rear of 3910 at 11:19 A.M. At 11:24 A.M., [] Ladale Pace (Pace) . . . dressed in a dark hoodie, dark jeans and black shoes entered the rear of the Chrysler on the driver's side, remained for approximately [thirty] seconds, then exited the Chrysler . . . .

[] Pace used Hernandez's keys to enter Hernandez's home, where he went upstairs to Hernandez's bedroom, and searched the drawers of Hernandez's dresser. Juanna Perez (Perez)[,] the wife of Hernandez, . . . went to the living room . . . . [where she] noticed a male[, Appellant,] standing outside of the door with his hands in his pockets. Perez began calling for her husband and saw [] Pace on the stairs holding a gun. Pace ran out of the house and turned left, and the male who was outside ran away to the right.

* * *

Jorge Gonzalez (Gonzalez), who lived on I Street, was going to his van in the same shared driveway when he heard gunshots. Gonzalez was [ninety] feet[2] away when he saw Appellant who was wearing a gray hoodie with the hood partially covering his hair approach Hernandez. Hernandez was on the ground when Gonzalez witnessed Appellant shoot Hernandez in the back of the head. Appellant then entered the front passenger side of the Chrysler and the car drove south. . . .

* * *

At 11:29 A.M., two (2) security cameras affixed to the rear of J.J.'s Café, located at 1065 East Erie Avenue, showed the Chrysler enter the shared driveway between Elsinore Street and

_____

2 In his brief, Appellant alleges that Gonzalez was ninety yards away. (**See** Appellant's Brief, at 20). At the suppression hearing, defense counsel argued that Gonzalez was thirty-three yards away. (**See** N.T. Suppression and Trial, 7/08/14, at 58). During its charge to the jury, the trial court stated that "Mr. Gonzale[z] was [ninety] yards away." (N.T. Trial, 7/16/14, at 44).

J Street and pull into a side street out of camera view. Appellant and the unidentified driver subsequently walked into camera view, and walked toward J Street. . . .

* * *

Detective Gregory Singleton [] obtained a picture of Appellant, and prepared a photo array for Gonzalez using a computer to generate the other seven (7) images of individuals with similar features. In the photograph of Appellant he had longer hair than the other males in the photo array. Gonzalez identified Appellant out of a photo array by circling Appellant's picture and signing underneath. . . . Appellant was ultimately arrested on April 11, 2012. . . .

(Trial Court Opinion, 6/12/15, at 3-6) (quotation marks omitted).

Appellant and his co-defendant Pace proceeded to a jury trial. During a suppression hearing prior to trial on July 8, 2014, Appellant moved to suppress the out-of-court photo array identification by Mr. Gonzalez, as well as any in-court identification because the circumstances regarding the display of the photo array was "[s]o unnecessarily suggestive to create substantial likelihood of misidentification." (N.T. Suppression and Trial, 7/08/14, at 32). The court denied the motion to suppress concluding that "issues raised by [Appellant] go to the weight of the evidence and do not rise to the level as being unnecessarily suggestive or unduly prejudicial." (*Id.* at 63).

On July 17, 2014, the jury found Appellant guilty on all counts. On the same day, the court sentenced Appellant to mandatory life imprisonment for

the murder, with no further penalty assessed for the other charges. (*See* Trial Ct. Op., at 1). On July 28, 2014, Appellant filed a timely[3] post-sentence motion, which was deemed denied by operation of law. *See* Pa.R.Crim.P. 720(B)(3)(a). This timely appeal followed.[4]

Appellant raises two questions for our review:

A. Whether the trial court violated Appellant's constitutional rights by denying Appellant's motion to suppress the out-of-court photo identification and subsequent in-court identification by witness Jorge Gonzalez on the grounds that the photo identification procedure was so unnecessarily suggestive as to create a substantial likelihood of a misidentification and the in-court identification was the fruit of the unlawful out-of-court identification?

B. Whether the Commonwealth attorney engaged in prosecutorial misconduct in closing argument by stating his opinion that a person seen in an (sic) "blown up" still frame from a surveillance camera bore a "striking resemblance" to [Appellant] where the Commonwealth's expert witness had testified that due to low resolution of the surveillance camera there was (sic) "there is not enough raw image quality" to permit a facial identification?

(Appellant's Brief, at 2) (emphasis omitted).

In his first issue, Appellant claims that the court erred in denying his motion to suppress both the out-of-court and in-court identifications by Mr. Gonzalez. (*See id.* at 18-22). Specifically, Appellant argues that the out-

---

[3] July 27, 2014, was a Sunday.

[4] Appellant filed his notice of appeal on December 15, 2014. Pursuant to court order, Appellant filed a concise statement of errors complained of on appeal on January 12, 2015. *See* Pa.R.A.P. 1925(b). The trial court filed its opinion on June 12, 2015. *See* Pa.R.A.P. 1925(a).

of-court identification and subsequent in-court identification should have been suppressed because they were unduly suggestive. (***See id.*** at 21-22). We disagree.

Our standard of review for denial of a motion to suppress identification evidence is well settled.

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts. This is the standard of review we have applied in appeals challenging the denials of motions to suppress identification testimony.

***Commonwealth v. Moye***, 836 A.2d 973, 976 (Pa. Super. 2003), *appeal denied*, 851 A.2d 142 (Pa. 2004) (citations and quotation marks omitted).

> Whether an out of court identification is to be suppressed as unreliable, and therefore violative of due process, is determined from the totality of the circumstances. Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion. Identification evidence will not be suppressed unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

***Commonwealth v. Fulmore***, 25 A.3d 340, 346 (Pa. Super. 2011), *appeal denied sub nom.* ***Commonwealth v. Kingwood*** 34 A.3d 827 (Pa. 2011) (citations and quotation marks omitted).

"A photographic identification is unduly suggestive when the procedure creates a substantial likelihood of misidentification." **Commonwealth v. Fisher**, 769 A.2d 1116, 1126 (Pa. 2001) (citation omitted). "Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than those of the others, and the people depicted all exhibit similar facial characteristics." **Id.** (citation omitted).

Preliminarily, we note that Appellant has failed to ensure that a copy of the photo array, which he argues was unduly suggestive, was included in the certified record. "Appellant has the duty to ensure that all documents essential to his case are included in the certified record." **Commonwealth v. Walker**, 878 A.2d 887, 888 (Pa. Super. 2005); **see Commonwealth v. Manley**, 985 A.2d 256, 263-64 (Pa. Super. 2009), *appeal denied*, 996 A.2d 491 (Pa. 2010) ("Because we have not been furnished with a copy of the photo array in question in the record, the issue challenging suppression of the photo array is deemed waived."). Therefore, we conclude that Appellant has waived his challenge to the out-of-court identification based on the photo array. Moreover, it would not merit relief.

Here, Appellant's counsel argued that the photo array identification should be suppressed because, in his photo, Appellant had an Afro, whereas the other individuals had close-cut haircuts. (**See** Appellant's Brief, at 12-14) (citing N.T. Suppression and Trial, 7/08/14,, 7/08/14, at 24-29). The suppression court reviewed the photo array and concluded that the pictures in the array, which were "generated by a computerized system based upon

similarity to Appellant[,]" were not unduly suggestive. (Trial Ct. Op., at 8; *see id.* at 9). The court agreed that Appellant "had longer hair than the other individuals who were featured in the photo array," but concluded "the procedure in the instant case did not rise to the level of being unduly suggestive or create a substantial likelihood of misidentification." (Trial Ct. Op., at 9).

Upon review, we find no error in the trial court's decision to admit the out-of-court identification evidence where the witness identified Appellant, whom he saw shoot Hernandez, from a computer-generated photo array less than two months after the incident. *See Moye*, *supra* at 976; *Fulmore*, *supra* at 346. We agree that the fact that Appellant had the longest hair of the selected individuals was not unduly suggestive. *See Fisher*, *supra* at 1126. Accordingly, we conclude that the trial court did not err in admitting the out-of-court identification because the identification procedure was not so impermissibly suggestive to give rise to a likelihood of misidentification. *See Fulmore*, *supra* at 346. Therefore, Appellant's first issue would not merit relief.[5]

_____

[5] Because the out-of-court identification was properly admitted, and because Appellant simply claimed that the in-court identification should have been suppressed "[f]or the same reasons[,]" to the extent Appellant challenges admissibility of the in-court identification, his claim also would not merit relief. (Appellant's Brief, at 22).

In his second issue, Appellant argues that the trial court erred when it denied his motion for a mistrial because of prosecutorial misconduct during closing arguments. (*See* Appellant's Brief, at 23-27). Specifically, he contends that his motion should have been granted because the prosecutor impermissibly offered his opinion that Appellant looked like an individual in a still frame taken from surveillance footage. (*See id.*). We disagree.

Preliminarily, we note that although Appellant's second issue concerns comments made during closing argument, he has failed to provide a copy of the transcript of that argument. (*See* N.T. Trial, 7/15/14, at 59 ("Closing arguments not transcribed.")). Accordingly, Appellant has waived this argument. *See Walker*, *supra* at 888. Moreover, even if not waived, Appellant's second issue would not merit relief.

Our standard of review of a trial court's decision not to grant a mistrial is well settled.

> In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Culver*, 51 A.3d 866, 871 (Pa. Super. 2012) (citation omitted).

> It is well-established that a prosecutor is free to present his argument with logical force and vigor so long as there is a

reasonable basis in the record for the prosecutor's remarks. Further, reversible error arises from a prosecutor's comments only where their unavoidable effect is to prejudice the jurors, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict.

***Commonwealth v. Busanet***, 54 A.3d 35, 64 (Pa. 2012), *cert. denied*, 134 S.Ct. 178 (2013) (citations omitted). Furthermore, "[a] trial court is required to grant a mistrial only where the alleged prejudicial event[s] may reasonably be said to have deprived the defendant of a fair and impartial trial." ***Commonwealth v. Brinkley***, 480 A.2d 980, 986 (Pa. 1984) (citation omitted).

Here, although we cannot review the transcript itself, the trial court summarized the pertinent part of the prosecutor's closing argument.

During the Commonwealth's closing argument, a still frame from a rear J.J.'s Café security camera was shown. The still frame came from a compilation of security camera footage, Commonwealth exhibit C-307, which was previously admitted without objection by Appellant. . . . The Commonwealth opined that this figure looked like Appellant.

(Trial Ct. Op., at 10) (record citations omitted). The court then noted that the "statement was mitigated by [its] repeated instruction to the jury that the statements of counsel are not evidence, and the fact that the jury had already seen the image during testimony and thereby had the opportunity to reach their own conclusions." (***Id.***).

The court then concluded that "[i]n light of [its] instructions to the jury that the arguments of counsel were not evidence[,] and the opportunity of the jury to view the image independent of the prosecutor's comments, the

comments complained of did not deprive Appellant of a fair trial." (***Id.***); *see* ***Commonwealth v. Tedford***, 960 A.2d 1, 37 (Pa. 2008) ("the jury is presumed to follow the court's instructions.") (citation omitted).

Upon review, we conclude that Appellant has not shown that the prosecutor's comments prejudiced the jurors such that they could not weigh the evidence objectively and render a fair verdict. ***See Busanet***, ***supra*** at 64. We agree with the trial court that its instruction to the jury cured any alleged prejudice from the prosecutor's statement. ***See Tedford***, ***supra*** at 37; ***Brinkley***, ***supra*** at 986. We therefore conclude that the trial court did not abuse its discretion when it denied Appellant's motion for a mistrial. ***See Culver***, ***supra*** at 871; ***Busanet***, ***supra*** at 64. Accordingly, Appellant's second issue would not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/2016